Good morning, Counsel. Good morning. Thank you, and may it please the Court. Deepak Gupta for the Plaintiff's Appellants. I'd like to try to reserve five minutes for rebuttal. Okay. The parties agree that this appeal, both with respect to summary judgment and even with respect to class certification, hinges on a dispute regarding substantive state law. That disagreement concerns the appropriate standard for liability under California's break laws. So let me stop you right there. It seems to me we have a genuine dispute about what state law provides here. One the California Supreme Court doesn't appear to have resolved. You each take strands from Brinker and make arguments. Why shouldn't we certify these issues? I think because of what this Court has said about what you do in this circumstance. So obviously when there's a controlling California Supreme Court case, it's simple. You follow it. But what this Court said in a case called Teleflex Medical, this was a couple years ago, and it's 851 F3rd 982, is that whereas here, and I'm quoting, there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state's intermediate appellate court decision unless the federal court finds convincing evidence that the state's Supreme Court likely would not follow it. But don't we have conflicting decisions from the Court of Appeals? Well, let me ask you, as I read the Sears case, the Daley case, it seems to adopt the position taken by your opponents, which is that the absence of a policy doesn't automatically lead to liability. The Daley case, and apologies, let me just get it. It's the one case that's not cited by any side. I know, but I have these industrious young folks who work for me. The Daley case, you know, what's interesting about that case is it doesn't, it's got. It may be wrong. It may be wrong. But all California decisions may be wrong as far as I know. But that case, I apologize, it precedes the line of authority that we're talking about. Well, it's post Brinker. It's post Brinker, that's right. And so we have Daley on one side and Benton and Bradley on the other. And so I'm trying to figure out what the California law is. I think it's a little bit different than that. You had Brinker. Then Daley came out. And then you have Bradley and you have Benton and you have Faulconberry and you have Lubin and you have Alberts. And all of those cases come after Daley. From the same division of the Court. No. From the same divisions of the Court of Appeal that decided Benton and Bradley. Well, I mean, Daley is actually a Fourth District case, right? Right. So you've got Fourth District case law that postdates Daley. And Daley really has, as far as I can tell, just a paragraph, maybe really just a sentence that goes in the other direction, with no analysis of the wage order or the statutes or Brinker. Why are you so resistant to asking? The California Supreme Court has told us, gee, don't make important state law on your own. Right. Ask us first. Right. This is important state law. I don't lack any confidence in my prediction that the California Supreme Court would follow all of the California Courts of Appeals postdating Daley. I think the problem is this case has been going on since 2008. And part of the reason is that it's ping-ponged back and forth to the Ninth Circuit. It was stayed during Brinker. And so, you know, given how long the California Supreme Court would take to decide this, that would be a real hardship to our clients. Well, my recent experience is they get back to us in less than a year with the answer in state law, which I think in this case really is dispositive one way or the other. If the law is the way your client thinks it is, the judge probably erred in granting summary judgment. If the law is the way the district judge thinks it is, she didn't err. And so. Judge Hurwitz, you're absolutely right that California's substantive law is dispositive of this appeal. But that's true of many appeals. And I think there are many cases in which the Ninth Circuit is called upon to decide questions of California law where you have far less evidence from the California Courts of Appeals than you have here, which is an unbroken line of all of the cases that I just mentioned. Although the district courts, for some reason, seem to by and large have adopted the other view. That's right. So that it's not giving, assuming that my colleagues in the district court are smart and able people, it strikes me that it's not intuitively obvious that California law is clear. Well, I think when you look at those federal district court decisions, what you won't see is that they've identified a considered split among the California Courts of Appeals and are choosing one side of that split. Instead, what I think you have is a kind of chain reaction where one or two district court decisions went the wrong way, and they just sort of cited each other. And I don't think when you're making an eerie prediction about what California law is that you should give much weight, if any, to that kind of thing. Instead, you have to make a prediction. You have to decide what has the California Supreme Court said. We think Brinker, by the way, says quite a lot on the question. Brinker holds that you have to provide these breaks, not simply that you can come into compliance accidentally. Yes. See, Brinker, all that Brinker seems to say clearly is that you can't prevent your employees from taking the breaks or discourage them from taking the breaks once you've made them aware of their right to take them. That's another issue in this case, but let's assume that they were made aware. Right. It doesn't seem to deal with the issue of there's a concurrence that says, in the absence of records, we'll presume that you didn't, but no court of appeals has yet adopted that concurrence. Well, I think, again, if you're making an eerie prediction, you have to give considerable weight to that concurrence. That is a concurrence written by the author of the majority California Supreme Court decision explaining the import of her decision for guidance on remand, and no justice of the California Supreme Court uttered a word in disagreement of that concurrence. That would make everything that Justice Ginsburg writes the law of the land, as long as nobody else disagrees. I mean, I think it's a little bit different than that with respect, Judge Horwitz, because it's guidance about what the opinion, the author of the opinion meant, and then you have the California Courts of Appeals following that approach. And you don't, my opponents haven't cited to any California Court of Appeals decisions that reject that concurrence. Let me say, and this is not, you don't have to answer this question. It's strange. Normally what happens is plaintiffs who lose in the district court are just dying to get to the California Supreme Court. Right. And the defendants who lose in the district court don't want to get anywhere near the California Supreme Court. And if you conclude after a considered review of these California Court of Appeals cases that there really is disagreement, I'd be surprised if that's your conclusion, because the cases so strongly favor us, and the only one that runs against us is a case that they didn't even cite, the Daly case. That was Judge Phillips' conclusion in this case, was it not? Judge. That the bad, in effect, what you think is bad law is law. Well, I think let's characterize what Judge Phillips did, because she did not engage in the discussion of all of these California Court of Appeals cases and come to a considered conclusion that she thinks the weight of California law post-Brinker goes a certain way. She just didn't engage with those cases at all. And I think that's what, unfortunately, so many of these district court decisions have done. They're just citing each other. And so I don't want to resist too hard, because I do think at the end of the day if you were to certify the California Supreme Court would say what all the California courts are saying. But I think it would be a futile step that would delay the proceedings. And so that's the only reason I'm resisting, because I think with the exception of one or two sentences in the Daly case that, you know, I think you have to evaluate based on the persuasiveness and thoroughness of its analysis, you've got cases like Benton and Bradley that have an exhaustive analysis. These were cases that were sent back down after Brinker for a thorough consideration of what Brinker meant. And Brinker said you've got to provide the breaks. And let me ask you one other question about this. There's a footnote in a subsequent California opinion, which neither of you cite, where the California Supreme Court says essentially we've left this issue open. And I'll see if I can remember which case it is. So my question to you is, hasn't this issue been left open by the California Supreme Court? Well, I think what the California Supreme Court, it depends on what you mean, the California Supreme Court has said you've got to provide these breaks. And the defendant's view is you can satisfy that obligation by doing nothing, because that's really what they did here, right? They had no policy authorizing the breaks. They did not inform their employees about the opportunity to take breaks guaranteed by California law. They never paid a premium wage for missed breaks. They failed to pay for any rest breaks. They failed to keep any records. All of the things that California law requires, they did none of those things. And so that's why they're left to argue that you can come into compliance by accident, by inaction. And what the California courts have resoundingly rejected is that precise view. I think Benton says it best, perhaps. They say, we fail to see how the defendant could discharge its affirmative obligation to authorize and permit meal and rest breaks purely through inaction. And there really isn't any ongoing disagreement among the California courts of appeals on that question. I think for you to make the eerie prediction, you have to look at the extant state of California law and decide what does California law say. If there were cases, if there was at least one case out there where a California judge said, I think this is unclear or I think the law is otherwise, I think then there would be grounds for certification. But I think here you can simply follow the weight of existing California law and reverse and remand both the summary judgment and certification. And I apologize for not having it when I asked you the question before. The case I'm thinking about is Duran. And there's a footnote 28 where the court says, we don't today reach essentially the issue that you seem to be posing. Right. And I think we're not saying that the California Supreme Court in Brinker answered every question that's relevant here. That's not our position. Our position is that to the extent Brinker and the California Supreme Court have not fleshed out what that affirmative obligation means. First of all, the affirmative obligation cannot be discharged by doing nothing, which is what happened here. And that if you have any doubt about that, the overwhelming weight of California appellate case law, the unbroken line of cases after daily suggests that the district court's decision rested on a manifestly erroneous understanding of California law. If there are no further questions, I'll reserve for rebuttal. All right. Thank you, counsel. Thank you. May it please the court. The court entered three orders. The district court entered three orders. It denied the plaintiff's motion for summary judgment. It decertified the class. And it entered summary judgment on plaintiff's individual meal and respite claims. Now, let me tell you what CRST did as opposed to nothing, which is what the plaintiff characterizes. The clock. Thank you. CRST posted the wage order in the Fontana Terminal in the reception area with the area where the driver's. So let's assume that was sufficient posting. The question is, according to your colleague, if they didn't have a formal meal and rest break policy in compliance with So address why that's not California law. That's not California law. That's not what Brinker said. Well, Brinker, everybody agrees Brinker doesn't answer the question. But don't a bunch of court of appeals cases come down his way? Court of appeal. Sorry. Court of appeal. But if you look at the cases that say that, the ones that he says. So the answer is yes. Yes. Well, no. I can't answer it. I mean, as I read Benton and I'll forget the other one, but it doesn't matter. They both say something like in the absence of a policy, you violated the statute. What they talk, whether or not there's damages for an individual is a separate issue. But on liability that establishes. Right. Those were instances where the employer either had a policy that prevented them from being able to take breaks. Bradley was an employer that didn't present any evidence. Benton was an employer that did not permit breaks. Bufill was one that forbid the employees to take breaks. Godfrey discouraged the employees from taking breaks. And Lucan and Faulconberry were the employer regularly discouraged breaks. That's a different circumstance if you have a policy and then you do things to undermine it. Or you have no policy, but you tell people they're not allowed to take breaks. That can become a violation of the law under Brinkman. So you think it's sufficient under California law to comply if you merely post the statute at the place of work, statutory requirements at the place of work, and then do nothing? If you do not impede, prevent, or discourage people from taking it, that is. The answer to my question is yes. The answer to that question is yes. It's two-part, that you either don't post the notice, or you do something to discourage, impede, prevent them from being able to take a break. So if that's the law, why isn't there a fact question about whether or not your client impeded following the statute by its 50-mile-an-hour requirement? That I can answer. The 50-mile-an-hour is not a requirement that there's this crumbling highway behind a driver. Well, it's in the driver's manual. If I were a driver and I wanted to figure out what my employer wanted, and the manual said you're supposed to average 50 miles an hour on trips, I would regard that as a job requirement. Well, look how Mr. Cole described it. He said I could take breaks whenever I wanted. I averaged 65 miles an hour. I took breaks whenever I wanted. I never had a problem being late for a load. I always was on time. And I took meal and rest breaks whenever I wanted to take them. Well, he's got sort of a contradictory declaration. I wanted to ask you about that. His declaration says this requirement made it impossible at times to take rest and meal breaks. And then, of course, he doesn't describe any that he missed. So is the problem here an evidentiary deficiency as opposed to whether or not in some cases this might be a problem? I think that's the problem the plaintiff has with everything they say. They never tie any of the alleged deficiencies with an actual missed meal or rest break. In other words, they don't say the 50-mile-an-hour trip planning guide is something that caused me to miss a particular meal and rest break. And that's what the district court found, that there was no evidence linking this alleged policy with a missed meal and rest break. What relevance does it have to this case? The answer may be none, but it intrigues me. At the time these events took place, the employer didn't think these folks were subject to California law because it thought the law was preempted and that issue got litigated. I still think it's preempted, but that's another day. Yeah, but we don't criticize prior decisions in the Ninth Circuit. I don't either. Okay, good. We're both on the same ground now. It's a little strange to say that during that period when you didn't think they were entitled to California breaks, you were doing nothing to stop them from taking California breaks. Here's what CRST did with its break policy. CRST posted the notice so they had notice of what the rights were under California law. Although, but see, if anybody had asked anybody at CRST, they would have said, California law doesn't apply to you. Don't worry about that. There was no evidence that that was true. I know. That's why I'm asking. It's sort of a strange record. In that part, there's no evidence of it. The second thing is CRST told the drivers that they could take breaks whenever they wanted. They encouraged them to take breaks. Where did it say they could take them whenever they wanted? What I saw in the policy was you should take breaks as necessary and a, what, 20-minute break every five hours? It was you were to take at least a 15-minute break every five hours. The plaintiffs had turned that around and said that they were only allowed to take a 15-minute break every five hours. That is a misstatement, misconstruing of the policy. And the only way they can get to where they want to be is to actually misstate, misrepresent what that policy says. It never says that they can only take a 15-minute break. CRST encourages them to take the breaks that they need to take. They all testified that they were told that they could take the breaks when they needed to and when they wanted to. They were not limited in the frequency, the number, or the length of the breaks. And Cole himself said that he took a two-hour break in the middle of his work shift while he was out on the road. And he took other breaks that were shorter. But he took at least a two-hour break. That's not a company that is somehow preventing people from taking breaks. It never told any driver that they could not take breaks. It never told driver that they were precluded from taking breaks. When Cole said he called one time, the company said, take a break. Didn't have any problem with it. The company did nothing to impede or prevent any driver from taking a break at any time. And none of the witnesses that they called, the class members, ever said that they were ever told they could not take a break, that they were told they were not. We're dealing here with Mr. Cole's claim, aren't we? I mean, realistically, because if we affirm the summary judgment as to Mr. Cole, we don't get to the other class members. That would be correct. And if we reverse the summary judgment as to Mr. Cole, then it seems to me the district court might again consider whether or not to certify a class. Because her decertification was based on her view of California law, wasn't it? It was, yes. So let me ask you the $64 question. Do you want to go to the California Supreme Court? I don't think it's necessary, Your Honor. I know neither of you think it's necessary. You both want to make us make the hard decisions, but why shouldn't? So maybe you should settle, since you agree on something. But why shouldn't we? You both persuasively argue that California law is 180 degrees different, and there's a split in the courts. Why shouldn't we let the California Supreme Court? This is important stuff. Why shouldn't we let them make state law? I must say, I used to be a state Supreme Court justice, and I hated it when the Ninth Circuit made important Arizona law. So why shouldn't the California Supreme Court make important California law? Because I think in Brinker, if they had said that a policy, that the wage order was not enough, it would have said that. It never said anything like it. It said what an employer is required to do is to post the wage order. Well, but here it's surely an open question. It says in footnote 28 in Duran, in regard to other wage and hour claims, some courts have held that the absence of a uniform policy supports certification if such a policy is required by law. And they don't say it's not required by law. They say we express no opinion on the subject. So you can't say that Brinker resolved this when a subsequent case says we don't have an answer to this yet. They haven't explicitly said it in Brinker, but what they did say is what's an employer required to do? We all waited for Brinker to come down so we would know what we had to do. We did, too. Yes. And what they said was post the wage order that's required because the posting is the notice to employees of their rights. We see that in federal law as well as state law. There are required postings to give notice to employees of their rights under the law. That's the whole purpose behind it. And if we did it, we met that requirement, and there's no dispute that we posted that notice. The concurrence, this idea that there's an absence of records, is not the law. I know, but it's two justices of the Supreme Court, and the rest of the Supreme Courts never addressed that issue. It's not four, though, which is required for it to be the law. No, I understand. It's not. I can count. But it's two justices of the Supreme Court saying we didn't have to reach it in this case, which is why I think Mr. Gupta is wrong that they sort of resolved it. But we kind of think the law goes even further than our colleagues mentioned today, and we want to make that clear so that when the next case comes up, we can fight about that. And why don't we let them fight about it? Here's the reason why. It is the idea that you would have a presumption like that when there is no requirement to ensure that employees take breaks. It is inconsistent with that decision. The decision saying that you don't have to take breaks. Drivers are free to work through breaks if they want. We don't have to police it. And more than that, we even have records of breaks. The drivers record those breaks in their driver's hours of service logs. There are four duty statuses. One is off duty, and when Cole went off duty to take a break, he recorded it as off duty. There is a place, and there are records for that. When the plaintiff says that it's not on the pay statements, there's no requirement to put it on the pay statements. There's nothing that they didn't notify the dispatcher they were taking a break. There's no requirement that they do that. There's nothing on the trip sheets that they took a meal break. It's not required. They've got the hours of service logs that are required under federal law that they keep because they're interstate truck drivers. And they're to keep their duty status 24 hours a day as off duty, off duty sleeper berth, on duty not driving, or on duty driving. Can I ask you a related question? Yes. Do you agree that how we come out on California law also answers the class certification question? Because the district judge certified the class. Brinker came down. She then said, oh, the way I read Brinker is the same way CRSD reads it. Therefore, I'll decertify the class. If we were to find the opposite on California law, what should we do with the class certification issues? I think the court also decertified because there is not a common, you know, her decision on certification was pre-Walmart. And there was nothing that the plaintiffs presented that would be a common answer to the question of whether people missed meal and rest breaks. But if she did that decertification under a misapprehension of what California law requires, and we find that either because the California Supreme Court tells us that or, as you both suggest, we get there on our own, shouldn't we at least give her a chance to take a look at the certification issue again? I don't think that's necessary. Because in the case, the plaintiffs haven't proven any link between any of the alleged violations of California law, the policies they claim we have, the things that we do, and a missed meal or rest break. They've got to provide some kind of a link between the two. Isn't that a damages issue? That is not. That's a liability issue. Because if I provide them the opportunity to take it, they've got to show that they, in fact, didn't take it because of something the employer did. And is it also a representative issue on Rule 23? Because if this person didn't miss any breaks, then he wouldn't be a very good representative of a policy, even if we did say that this is what California law. That's correct. But he would have to demonstrate, and he had the opportunity to do it, and he never did show that any of the things he alleges caused a missed meal or rest break. But is that the basis on which the judge decertified the class? I thought she decertified the class on the basis of her view that once you provide notice, same reason she gave you summary judgment. Wasn't that really the reason that she decertified the class? That was part of the reason. Yes, that was part of the reason. If she had just said, this is the wrong plaintiff, he can't represent the class, then that would be different. But that's not what she said. And it was the wrong plaintiff because she granted summary judgment against him on his individual claims. But after she decertified. After she decertified. That is correct. That is correct. But on the issue of certification, that was an issue of the employer posted the notice and the employer did nothing. The plaintiffs never showed that the CRST did anything to in any way impede or prevent the driver from taking a meal or rest break. So it's two-part. Notice and impeded. And they were unable to show even that there was any type of discouraging, impeding, preventing of a meal or rest break. And for that reason, she decertified because you can't get a common answer from the representative plaintiff as to who missed and why they missed. And that's why the court's order should be, they should be affirmed. All right. Thank you, counsel. All right. Thank you. Rebuttal. Rebuttal. I think that in the first part of the argument, I made all the points I want to about why both orders really rest on the district court's erroneous understanding of California law. I just want to make clear that the places to look for that are excerpts of Record 28 for the Class Circuit Opinion and excerpts of Record 7 for the Motion for a Summary Judgment. I also think it's important to emphasize that with respect to the last set of questions that both the Ninth Circuit and the California courts have emphasized that you need to look at the plaintiff's theory of the case and understand what the plaintiff's theory of the case is to make an appropriate class certification decision. So if we were to agree with you on the merits of your, Mr. Cole's claim, what should we do with the class certification order? Shouldn't we just give it back to the district court and let her then address it under the correct hearing? I think you have no, I mean, you would have to reverse the decertification order, right, at the very least, because it is premised on an erroneous. We have to? Well, if you agree, I think if you agree, Judge Hurwitz's question is premised on the understanding that you conclude that she was wrong. Well, why don't we just tell her to reconsider it, vacate it as opposed to reverse it? See, maybe I have in my mind a different world, but in my mind reversing is saying you got it wrong, you should have certified the class. Vacating is saying think about it again. Oh, to be perfectly clear, I mean, we're not asking this court to direct class certification in the first instance. Okay, that's all I was asking. Yeah, I think, okay, so we're on the same page there, I think. But if you agree with us that we're right about and that the California Courts of Appeals, that unbroken line of cases, correctly represent California law, I don't see how that doesn't inexorably lead to a reversal of the decertification. Now that I've identified Duran, could you address it? Sure. I think it is correct to say that the California Supreme Court has not, and we wouldn't be here with this appeal, right, if the California Supreme Court in Brinker had decided all of the- Right, but you've got a case in which they cite Benton. Yes. And Bradley. Right. And say some courts have done this, we express no opinion on this issue. It's a little different than just saying some courts have done this. I mean, that kind of footnote wouldn't trouble me. But, boy, that seems like a deliberate footnote saying we're still thinking about this one. Well, I mean, in candor, I don't think all of the case law that we are relying on that's been fleshed out by the California Courts of Appeals has been adopted by the California Supreme Court. I think that is fair to say. But I think, again, your task is to decide what California law is as best you can. And I also should mention that the Abdullah case from this court cites Faulconberry and Bradley with approval as California law with respect to certification of a meal and breast break class. So I think that is your precedent. And I think if you truly believed that there was a conflict in the California Courts of Appeals, I think you would be justified in certifying the question to the California Supreme Court. But I don't think that this unbroken line of well-considered authority, as against a couple of sentences, and I've gone back and looked at the Daley case, which, you know, I think it's notable that my friends didn't cite that case. They didn't cite the case because it doesn't have much of analysis. It barely has a holding on this question of what the affirmative obligation entails. And so I think the task for you is to decide, do I have enough here to conclude that the California Courts of Appeals can give me confidence in making an eerie prediction? I know that the California Supreme Court has not conclusively decided this question, but, you know, seven California Courts of Appeals have, and they're from all of the different districts. So there isn't a single California appellate district that points in the opposite direction. Under those circumstances, I think you have far more than you typically have when you have to make a difficult eerie prediction. But what do you think the California Courts of Appeal have said that definitively militates toward your position? Sure. Judge Rawlinson, I think I would point you in the first instance to the Benton case, which says that a defendant cannot discharge its affirmative obligation to authorize and permit meal and rest breaks through inaction. I'd point you to the language where they say that the language of the wage order imposes an affirmative obligation on every employer to authorize and provide legally required rest breaks.  So what is it that you're saying, are you saying that, what are you saying that the employer failed to do that it should have done? If the employer posts the wage order and then has a policy or a guide that says you should take your meal and rest periods, how is that inaction? Well, they didn't do those things, right? They didn't have a policy that says here are the breaks that California law allows you. But what case says they have to be that specific? Well, I think the cases say you can't have inaction, you've got to do something to authorize the breaks. But there's more than inaction here. They have a policy, as Judge Rawlinson said, they have a policy that says to the drivers, take breaks when necessary and at least I have the wrong numbers, 15 minutes every five hours. Right, and that's a policy that's contrary to California law. But that's not inaction. Well, okay, it's inaction on the core requirements that I laid out earlier, right? They didn't inform them of the breaks that were required by California law. They didn't authorize them. They didn't pay any premium wages. They didn't keep any records. But there's no case that says you have to be that meticulous or that detailed in terms of compliance with the wage order. Those are independent statutory obligations. I mean, the record keeping, the authorization, those are all requirements that they did not follow. To the extent they did anything here, what they did, and this is an alternative theory under which we would prevail even under their erroneous view of the law, what they did is to facially violate the law's requirements by saying to employees, well, you can take a 15-minute break every five hours. That's the only thing they said about breaks, and that was in their orientation manual. But that's a third of the breaks that are permitted under California law. And importantly, that's what it says. Well, that's not really a third. I mean, if you're only driving five hours, they get five minutes more than California law provides. But I think it's important to note, and I'm not sure if we did this in the briefing, that's what Federal law requires anyway. We all understand that they thought they were subject to Federal law. Exactly. If there are no other questions. All right. Thank you. Thank you to both counsels. The case just argued is submitted for decision by the court. The final case on calendar, Java Herry v. Java Herry, has been submitted on the brief. That completes our calendar for today, and we are in recess until 930 a.m. tomorrow morning. Thank you. All rise.
judges: Rawlinson, Hurwitz, Bough